UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
WALTER D. COOK,                    x
                                   x
              Petitioner,          x      89 Cr. 346 (SWK)
                                   x      03 Civ. 7922 (SWK)
         -against-                 x
                                   x
UNITED STATES OF AMERICA,          x      **OPINION AND ORDER**
                                   x
              Respondent.          x
----------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

     Petitioner Walter D. Cook ("Cook") moves to vacate his
sentence pursuant to 28 U.S.C. § 2255. Cook contends that: (A)
the Court erred in finding him responsible for over 100
kilograms of heroin; (B) his counsel provided ineffective
assistance by failing to argue that the Court's upward departure
for drug quantity violated the Ex Post Facto Clause; (C) his
counsel provided ineffective assistance by failing to argue that
section 2D1.5 of the United States Sentencing Guidelines (the
"Guidelines") was unconstitutionally vague as applied to his
case; (D) his indictment was not returned by a valid grand jury;
and (E) he is entitled to resentencing pursuant to the Supreme
Court's decision in United States v. Booker, 543 U.S. 220
(2005). For the reasons set forth below, the petition is
partially granted and Cook will be resentenced in order to allow
the Court to apply Amendment 503 to the Guidlines on
resentencing.

I.   **BACKGROUND**

Cook was indicted by a special grand jury convened on September 6, 1988. He was brought to trial on a superseding indictment filed on June 11, 1991. The evidence at trial established that Cook was a high-ranking member of a large, structured heroin organization run by George Rivera ("Rivera") in the South Bronx, New York (the "Rivera Organization"). The Rivera Organization distributed two major brands of heroin, known as "Sledge Hammer" and "Obsession." In the summer of 1988, after the Rivera Organization had already established itself as a major supplier of heroin on the streets of New York City, Cook, a high school friend of Rivera's, joined the conspiracy to oversee the Sledge Hammer line of heroin. Co-conspirators at trial testified as to the method by which the Rivera Organization distributed its heroin and Cook's role within the organization. In addition, the evidence at trial established that Cook carried a firearm, distributed firearms to his associates, and during the conspiracy brought firearms to a public park in order to protect his drug operation from a robbery. The Rivera Organization was brought down in May 1989, and Cook was arrested on September 27, 1990, in Florida.

Following a six-week jury trial in 1991, Cook was convicted on a number of counts: conspiracy to distribute, and possess with intent to distribute, heroin; conducting a continuing

criminal enterprise ("CCE"); various substantive counts of distribution and possession; and two counts of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Cook was sentenced on October 26, 1994, pursuant to the Guidelines in effect during his offense conduct. Cook's base offense level was calculated at 36 under the CCE provision of the Guidelines. The Court then applied a 4-point enhancement for over 100 kilograms of heroin atttributable to Cook and a 2-point enhancement for Cook's sanctioned use of violence. The Court, having determined that Cook possessed an adjusted offense level of 42 and a criminal history category of I, sentenced him to a term of life imprisonment, plus an additional 60 months on the § 924(c) counts to run consecutively.

Cook appealed the judgment, challenging, among other things: the propriety of his two § 924(c) convictions; the jury's finding that the distribution of Sledge Hammer and Obsession heroin constituted a single conspiracy; the quantity of heroin attributable to him at sentencing; the Court's application of an upward departure for the sanctioned use of violence; and the propriety of convicting him on both conspiracy and CCE counts. In a summary order dated June 21, 2000, the Second Circuit vacated the conspiracy count and one of the § 924(c) convictions, affirming the remainder of the convictions

and the sentence. The Second Circuit later denied Cook's petition for rehearing, explaining that Cook's sentence was "not unconstitutional" under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). <u>United States v. Rivera</u>, 282 F.3d 74, 75 (2d Cir. 2000) (per curiam). Shortly after his petition for certiorari was denied, Cook filed the § 2255 petition currently under consideration.

## II.   DISCUSSION

In his § 2255 petition, Cook challenged: (A) the Court's finding that he was responsible for over 100 kilograms of heroin; (B) his counsel's failure to argue that the Court's upward departure for drug quantity violated the Ex Post Facto Clause; (C) his counsel's failure to argue that Guideline section 2D1.5 was unconstitutionally vague as applied to his case; and (D) the validity of his grand jury indictment. Shortly thereafter, the Court granted Cook's request that the grand jury commencement, extension, and termination orders be unsealed and disclosed to him. Cook later amended his petition to add: (E) a claim under <u>Booker</u>.

### A. Cook's Responsibility for over 100 Kilograms of Heroin

Cook challenges the Court's finding that he was responsible for over 100 kilograms of heroin. He argues that Amendment 503 to the Guidelines clarified the operation of Guideline section 1B1.3 by stating that relevant conduct attributable to a

conspirator "does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." U.S. Sentencing Guidelines Manual ("U.S.S.G.") app. C amend. 503 (1994). Thus, he contends that the Court misconstrued the meaning of section 1B1.3 when it found him responsible for heroin that was distributed by the Rivera Organization before he joined the conspiracy. Alternatively, Cook argues that there was insufficient evidence to support a finding that he was responsible for over 100 kilograms of heroin.

### 1. Applicability of Guidelines Amendment 503

Cook's first argument implicates several important doctrines pertaining to a defendant's collateral attack of his sentence: (i) as a threshold matter, whether Amendment 503 may be applied retroactively; (ii) whether clarifying amendments may be raised for the first time on collateral attack; and (iii) whether a § 2255 petitioner has made an adequate showing to obtain relief for a non-constitutional claim that he failed to raise on appeal. After careful deliberation, the Court concludes that Amendment 503, which clarifies the operation of section 1B1.3, may be applied retroactively; the amendment is properly raised on Cook's collateral attack of his sentence; and he has made an adequate showing of cause and prejudice for failing to raise his claim on appeal. Consequently, the Court must vacate

his sentence and resentence him after reconsidering the appropriate drug quantity for which he is responsible.

### i.   Amendment 503 Clarifies the Operation of Section 1B1.3 and thus May Be Applied Retroactively

Cook argues that the Court erroneously held him accountable for heroin distributed before he joined the conspiracy. He contends that Amendment 503 to the Guidelines clarifies the operation of section 1B1.3 so as to preclude the Court's finding that Cook was accountable for the drugs distributed by the conspiracy before he became a member.

At sentencing, the Court placed on the record its finding of drug quantity:

> [T]he defendant was a joint participant in the charged conspiracy and knew or should reasonably have known that the conspiracy distributed at least 100 kilograms of heroin. The Court finds that the defendant could reasonably foresee the distribution of future amounts of heroin and knew or should reasonably have known what the past quantities distributed by the organizations were at the time he entered the conspiracy.

(Sentencing Tr. 18, Oct. 26, 1994.) This language, and the parties' arguments at sentencing, drew upon the Second Circuit's reasoning in <u>United States v. Miranda-Ortiz</u>, 926 F.2d 172 (2d Cir. 1991). In that case, the court held:

> The late-entering coconspirator should be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the conspiracy, he could reasonably foresee the distributions of future amounts, or knew

or reasonably should have known what the past quantities were.

Id. at 178. However, Amendment 503, which took effect just six days after Cook's sentencing hearing and five days after the entry of judgment, pronounces a rule that conflicts with Miranda-Ortiz and the Court's finding at sentencing. Specifically, Amendment 503 states that a defendant may not be held responsible for his co-conspirators' conduct before he joined the conspiracy, even if he knew about that conduct. U.S.S.G. app. C amend. 503.

Generally, sentencing amendments that may reduce a defendant's sentence are not applied after sentencing unless they have been designated for retroactive application. See U.S.S.G. § 1B1.10. Amendment 503 was not so designated. Nonetheless, amendments may be applied retroactively if they clarify the operation of the Guidelines rather than effecting a substantive change of the law. See United States v. Colon, 961 F.2d 41, 45 (2d Cir. 1992). Two circumstances make the Court's analysis of the proper effect of Amendment 503 unusually challenging in this case: (1) the questionable vitality of Miranda-Ortiz after Amendment 503 took effect; and (2) the lapse in time between the enactment of the Guidelines version under which Cook was sentenced and the effective date of Amendment 503. The Court will address the implications of these two

complicating factors before engaging in its substantive analysis of whether Amendment 503 clarifies the Guidelines or effects a substantive legal change.

In Amendment 503, the Sentencing Commission presents its interpretation of Section 1B1.3(a)(1), at one point citing to Miranda-Ortiz and a similar Seventh Circuit case, United States v. Edwards, 945 F.2d 1387, 1393 (7th Cir. 1991), with the purportedly supportive signal "cf." See U.S.S.G. app. C amend 503, Reason for Amendment. Amendment 503, however, states a rule that directly contradicts Miranda-Ortiz and Edwards, and specifically approves the rule adopted by several circuits that parted ways with the reasoning of those cases. See United States v. Carreon, 11 F.3d 1225, 1235 (5th Cir. 1994); United States v. Petty, 992 F.2d 887, 890 (9th Cir. 1993);[1] United States v. O'Campo, 973 F.2d 1015, 1024 (1st Cir. 1992). The Sentencing Commission's puzzling citation to Miranda-Ortiz may have played a role in the apparent continuing vitality of the case in this Circuit, as some district courts have recently cited to Miranda-Ortiz without noting that the Sentencing Commission adopted a contrary interpretation of section 1B1.3 in Amendment 503. See, e.g., Guerrero v. United States, 151 F. Supp. 2d 446, 448-49

---

[1] The Sentencing Commission cites to Petty at 982 F.2d 1374. The opinion found at that citation, however, was amended, and the amended opinion is reported at the citation listed above. The Ninth Circuit's revision of Petty does not affect the legal reasoning for which the Sentencing Commission cited the case.

(S.D.N.Y. 2001); <u>Scott v. United States</u>, No. 90CR.45(MGC), 97CIV.1633(MGC), 2000 WL 1051873, at *2 (S.D.N.Y. July 28, 2000).[2] The Commission's signal usage notwithstanding, the substance of Amendment 503 makes continued reliance on <u>Miranda-Ortiz</u> unwarranted.[3]

<u>Miranda-Ortiz</u> states that a defendant may "be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the

_____

[2] In an unpublished summary order, the Second Circuit has also referred to <u>Miranda-Ortiz</u> without recognizing the effect of Amendment 503. <u>See</u> <u>United States v. Barber</u>, 132 Fed. App'x 891, 894-95 (2d Cir. 2005) (unpublished summary order) ("We have assumed that, in some instances, a defendant may be responsible for activity that occurred among co-conspirators prior to the defendant's joining the conspiracy.") (citing <u>Miranda-Ortiz</u>, 926 F.2d at 178). In addition, the Fourth Circuit, with minimal analysis, has contended that Amendment 503 approved <u>Miranda-Ortiz</u>. <u>See</u> <u>United States v. Moriarty</u>, 116 F.3d 473 (4th Cir. 1997) (unpublished table decision).

[3] Ambiguous use of the cf. signal has troubled the legal community for many years. <u>See generally</u> Ira P. Robbins, <u>Semiotics, Analogical Reasoning, and the Cf. Citation: Getting Our Signals Uncrossed</u>, 48 Duke L. J. 1043 (1999). While the Court is hesitant to read disagreement into a signal that is purportedly supportive, the directly contradictory language of Amendment 503 as compared to <u>Miranda-Ortiz</u> and <u>Edwards</u> makes it difficult to find a sufficiently analogous proposition in those cases to support the substance of the amendment. The Sentencing Commission attempts to explain its citation to <u>Miranda-Ortiz</u> and <u>Edwards</u> with a parenthetical, indicating that those cases were "applying earlier versions of 1B1.3." U.S.S.G. app. C amend. 503. Unfortunately, this parenthetical does not explain how <u>Miranda-Ortiz</u> and <u>Edwards</u> are analogous to the interpretation adopted by Amendment 503. Both cases relied on versions of the Guidelines that focus solely on reasonable foreseeability, without any reference to knowledge of co-conspirator conduct. As such, the mere fact that these cases applied earlier versions of the Guidelines does not account for how the cases support the contrary proposition adopted by Amendment 503.

conspiracy, he could reasonably foresee the distributions of future amounts, or knew or reasonably should have known what the past quantities were." Id. at 178. Conceivably, one could infer from this language that past conduct is relevant to sentencing only to the extent that it demonstrates the scope of the conspirators' agreement and what is then reasonably foreseeable under that agreement, cf. O'Campo, 973 F.2d at 1025-26 (distinguishing the permissible use of past conduct from the ultimate holding of Edwards and, by analogy, Miranda-Ortiz), but that is an unnatural reading of Miranda-Ortiz. Rather, Miranda-Ortiz stands for the proposition that a late-entering co-conspirator may be held accountable for narcotics distributed before he joined the conspiracy if he knew or reasonably should have known what those past quantities were. This proposition is contrary to the language, purpose, and effect of Amendment 503, regardless of the Sentencing Commission's inscrutable signal usage. Therefore, the Court finds that Miranda-Ortiz's conclusion that late-entering co-conspirators may be held accountable at sentencing for past conduct cannot be reconciled with Amendment 503. The amendment nullified the Second Circuit's pre-1994 interpretation of section 1B1.3(a)(1).

The second aggravating factor in the Court's analysis stems from the length of time, and number of amendments, that separate the version of the Guidelines used at Cooks' sentencing--the

10

Guidelines in effect prior to November 1, 1989 (the "pre-1989 Guidelines")--and the enactment of Amendment 503 on November 1, 1994.[4] During this time period, the Sentencing Commission amended section 1B1.3(a)(1) or its relevant commentary on three separate occasions. Thus, the Court must not only consider the effect of Amendment 503 itself on section 1B1.3, but the cumulative effect of all intervening amendments on that provision. With these idiosyncrasies in mind, the Court considers whether Amendment 503 constitutes a mere "clarification of the Sentencing Commission's prior intent," which may be applied after Cook's sentence was handed down, or a "substantive change" that may not be applied retroactively. United States v. Kim, 193 F.3d 567, 578 (2d Cir. 1999) (citations omitted).

In United States v. Sabbeth, the Second Circuit adopted the Third Circuit's approach to determining whether an amendment to the Guidelines is properly construed as clarifying or substantive. 277 F.3d 94, 97-98 (2d Cir. 2002) (citing United

---

[4] The relevant reference point for the Court's consideration of Amendment 503's effect on the operation of the Guidelines is the version of the Guidelines applied at sentencing. Although Cook was sentenced in October 1994, his offense level was calculated pursuant to the Guidelines version in effect at the time of his 1988-89 offense conduct in order to avoid the constitutional prohibition against ex post facto laws. See Miller v. Florida, 482 U.S. 423, 431 (1987); U.S.S.G. § 1B1.11(a). Therefore, the Court will consider the question of whether Amendment 503 clarified section 1B1.3 not by reference to the pre-1994 Guidelines version in effect at the time of Cook's sentencing, but by reference to the pre-1989 Guidelines used to calculate his offense level.

States v. Diaz, 245 F.3d 294, 303 (3d Cir. 2001)). While recognizing that "there are no absolutely clear lines of demarcation between a substantive and clarifying amendment," the court considered three factors: "(1) the language of the amendment; (2) its purpose and effect; and (3) whether the guideline and commentary in effect at the time of sentencing is consistent with the amended sentencing manual." Id. at 97-98 (citing Diaz, 245 F.3d at 303) (internal quotation marks omitted). Applying each of these factors to the case at bar, Amendment 503 is properly considered a clarifying amendment.

First, Amendment 503 does not revise the actual language of section 1B1.3, but rather it amends the commentary to that provision by inserting an additional paragraph of instruction to Application Note 2. The addendum explains:

> A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct (e.g., in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week, the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defendant's offense level). The Commission does not foreclose the possibility that there may be some unusual set of circumstances in which the exclusions of such conduct may not adequately reflect the defendant's culpability; in such a case, an upward departure may be warranted.

U.S.S.G. app. C amend. 503; U.S.S.G. § 1B1.3 cmt. n.2 (1994). Nor can Amendment 503 be characterized as part of a "thoroughly

revised" section 1B1.3. <u>Sabbeth</u>, 277 F.3d at 98. Amendment 503 offers an explanation of how a conspirator's relevant conduct may, or, more accurately, may *not* be calculated under section 1B1.3. Section 1B1.3 is the only section of the Guidelines affected, and only a single paragraph is added to the relevant commentary.

Nonetheless, because Amendment 503 was just one of eight amendments to section 1B1.3 between the pre-1989 Guidelines and the amendment's effective date, <u>see</u> U.S.S.G. app. C amends. 76-78, 303, 309, 389, 439 & 503, the Court's analysis is not complete. From 1989 to 1994, the language of section 1B1.3 was reorganized and expanded, and its commentary doubled in size. Pertinent to this case, the language bearing upon co-conspirator conduct for which a defendant may be held accountable evolved from a single sentence in section 1B1.3's commentary in the pre-1989 Guidelines into the integral part of the text that it had become by 1994, and which it remains today. <u>Compare</u> U.S.S.G. § 1B1.3 cmt. n.1 (1988), <u>with</u> U.S.S.G. § 1B1.3 cmt. n.2 (1994); U.S.S.G. § 1B1.3 cmt. n.2 (2006).

In the pre-1989 Guidelines, the only reference to a defendant's accountability for co-conspirator conduct appears in Application Note 1 of section 1B1.3. At that time, without a single example, the Guidelines stated that "[i]f the conviction is for conspiracy, it includes conduct in furtherance of the

conspiracy that was known to or was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3 cmt. n.1 (1988). The language of Application Note 1 was revised on November 1, 1989, clarifying that a defendant shall only be held accountable for co-conspirator conduct "that was reasonably foreseeable by the defendant," and providing several illustrations of relevant conduct. U.S.S.G. app. C amend. 78 (1989).[5] Just three years later, the reference to conduct for which conspirators are "otherwise accountable" was relocated from section 1B1.3's commentary to its main text, and the scope of "reasonably foreseeable" conduct was further elaborated. See U.S.S.G. app. C amend. 439 (1992); U.S.S.G. § 1B1.3(a)(1)(B) & cmt. n.2 (1992).[6]

_____

[5] Illustration "e." explains that a defendant joining an ongoing marihuana conspiracy to take part in a single drug shipment "is not accountable for prior or subsequent shipments of marihuana imported by [his co-conspirators] if those acts are beyond the scope of, and not reasonably foreseeable in connection with, the criminal activity he agreed to jointly undertake." U.S.S.G. app. C amend. 78 (1989). This language was eventually modified to make the Sentencing Commission's rejection of accountability for pre-entrance conduct even clearer. See U.S.S.G. app. C amend. 439 (modifying the illustration to read that a defendant "is not accountable for prior . . . shipments of marihuana imported by [his co-conspirators] because those acts were not in furtherance of *his* jointly undertaken criminal activity") (emphasis added); U.S.S.G. § 1B1.3, cmt. n.2, Illustration (c)(3) (1994).

[6] Following the enactment of Amendment 439, section 1B1.3 stated that "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," shall be considered when calculating a defendant's offense level. U.S.S.G. § 1B1.3(a)(1)(B) (1992).

The history of section 1B1.3 demonstrates that as the provision evolved, the Sentencing Commission continued to clarify the meaning of the co-conspirator language first introduced in January 1988. See U.S.S.G. app. C amend. 3 (1988). In fact, that initial reference to co-conspirator conduct for which a defendant is otherwise accountable is the only instance in which section 1B1.3--in either its commentary or text-- includes any reference to knowledge of a co-conspirator's conduct. By November 1989, the reference to knowledge had been cast aside, and the commentary to section 1B1.3 only referred to conduct that was foreseeable, and thus more obviously prospective. Looking solely at the language of section 1B1.3, even the initial reference to knowledge in the pre-1989 version of the provision's commentary does not plainly indicate that a late-entering co-conspirator is responsible for *past* conduct of the conspiracy. Rather, an equally plausible interpretation of the language is that a defendant is only responsible for co-conspirator conduct "that was known to" the defendant *during* his tenure in the conspiracy. This more limited interpretation of the language is perfectly reasonable. See O'Campo, 973 F.2d at 1024-25 (developing the solely forward-looking meaning of section 1B1.3 in light of its early history).[7] Indeed, it is

_____

[7] It bears mention that Miranda-Ortiz did not interpret the pre-1989 version of section 1B1.3. Rather, that case cites a version

questionable that a defendant could be held responsible at sentencing for conduct for which he could not be held liable as a substantive matter. <u>See</u> <u>id.</u> at 1026. Therefore, the early reference to knowledge is at the very least ambiguous and susceptible to a variety of interpretations.

Given the ambiguity of the reference to knowledge in the language of the pre-1989 Guidelines commentary to section 1B1.3, the fact that this language was excised in 1989 in favor of solely forward-looking language, and the fact that this language never appeared in the text of section 1B1.3, Amendment 503 did not work a substantive change to the language of the Guidelines. Rather, Amendment 503 merely clarified the previously ambiguous language of section 1B1.3.

The second <u>Sabbeth</u> factor, which calls for an analysis of the purpose and effect of the amendment, is more straightforward. "Where the Sentencing Commission 'states its intent in making the change,' we give 'considerable deference' to its characterization." <u>Sabbeth</u>, 277 F.3d at 96 (citing <u>Kim</u>, 193 F.3d at 578). The Sentencing Commission explicitly

of the Guidelines that had already incorporated the 1989 amendment and omitted any reference to knowledge of past conduct. <u>See</u> <u>Miranda-Ortiz</u>, 926 F.2d at 177-78. Thus, it is not clear that the Second Circuit relied on the explicit reference to knowledge in the pre-1989 Guidelines. Rather, <u>Miranda-Ortiz</u> appears to read a knowledge prong into the rule for accountability despite the fact that it had already been stricken from section 1B1.3.

characterized each amendment to the relevant language of section 1B1.3 between 1989 and 1994 as clarifying. See U.S.S.G. app. C amends. 78, 439, 503.[8] Therefore, the Court finds that the purpose of Amendment 503 and its predecessors was to clarify the meaning of section 1B1.3. Moreover, the Court concludes that this purpose is borne out in the effect of these amendments on the Guidelines.

For instance, conduct related to a conspiracy was discussed in just one sentence of section 1B1.3's commentary prior to 1989, when Amendment 78 replaced that sentence with a full paragraph and several illustrations. Then, in 1992, Amendment 439 inserted the concept of accountability for co-conspirator conduct directly into the text of section 1B1.3, by adding subsection (a)(1)(B), which limited liability to reasonably foreseeable conduct. Additionally, that amendment honed the illustrations and expanded the commentary in Application Note 2. Finally, in 1994, Amendment 503 introduced commentary explicitly instructing courts that a "defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of the conduct." U.S.S.G. app. C amend. 503.

---

[8] Amendments 76, 77, 303, 309, and 389 also concern section 1B1.3, but none of these amendments has any bearing on the operation of conduct otherwise attributable to conspirators.

These various amendments obviously worked toward a clearer exposition of the principle that a defendant may not be held accountable for co-conspirator conduct that took place before he joined the conspiracy. However, the amendments did not change the effect of section 1B1.3. In fact, many courts interpreted section 1B1.3 to be entirely prospective even before Amendment 503 took effect. See, e.g., Carreon, 11 F.3d at 1235; Petty, 992 F.2d at 890; O'Campo, 973 F.2d at 1024. Amendment 503 merely resolved a circuit split by clarifying that the proper interpretation of section 1B1.3 was the one adopted by the majority of courts that had considered the issue. Thus, the effect of these amendments, individually and collectively, is to clarify the operation of section 1B1.3(a)(1) by unequivocally approving one of the two existing constructions of that section's language.

In sum, the purpose and effect of each of these intervening amendments, Amendment 503 included, is to clarify that co-conspirator liability only extends to reasonably foreseeable conduct after the defendant has joined the conspiracy, and that the consideration of conduct preceding that event is inappropriate.

The third Sabbeth factor requires an analysis of whether the relevant guideline and commentary at the time of the defendant's original sentencing are consistent with the amended

18

Guidelines. The Sabbeth court provides some guidance on how to answer this question. In that case, the previous version of the Guidelines provided an explicit range of offense levels for money laundering, while the amended Guidelines tied the offense level to the underlying offense that generated the laundered funds. 277 F.3d at 98. The Sabbeth court found that Amendment 634 was inconsistent with the Guidelines in effect at the defendant's sentencing because "the entire method of calculating [the defendant's] offense level would have been different" under the amended Guidelines, by requiring the sentencing court to "make an additional finding" that was not required under the earlier Guidelines. Id. at 99. In other words, the amendment redefined the way in which courts were to establish the proper offense level for a defendant convicted of money laundering.

No similar structural inconsistency is present here. Taking Amendment 503 into consideration, the Court would establish the proper amount of conduct "otherwise accountable" to the defendant by reference to the same provision in effect at sentencing, but would have clearer instruction as to the scope of co-conspirator conduct for which a defendant is properly held accountable. While the pre-1989 Guidelines left this scope open to some interpretation by using the unqualified and ambiguous phrase "known to or . . . reasonably foreseeable," Amendment 503 makes the temporal scope crystal clear. See U.S.S.G. app. C

amend. 503, Reason for Amendment (comparing Second and Seventh Circuit interpretations of earlier versions of the Guidelines with the interpretation intended by the Sentencing Commission and explicitly recognized by Amendment 503). The method by which a sentencing court establishes the proper conduct for which a defendant is "otherwise accountable" is unchanged; it remains embedded in section 1B1.3. The correct interpretation of that provision is the sole difference. Therefore, Amendment 503 and the intervening amendments are entirely consistent with the pre-1989 version of section 1B1.3 and the majority interpretation of that provision, even if the Second Circuit's application of that provision is altered.

As each of the Sabbeth factors supports a conclusion that Amendment 503 is a clarifying amendment, the Court agrees with the Eleventh and D.C. Circuits in finding that Amendment 503 clarifies the operation of section 1B1.3. See United States v. Word, 129 F.3d 1209, 1213 (11th Cir. 1997); United States v. Thomas, 114 F.3d 228, 262 (D.C. Cir. 1997). This analysis applies regardless of whether Amendment 503 is considered solely in relation to the pre-1994 Guidelines or to the overarching changes implemented from 1988 onward.

The Court is not persuaded by the Government's argument that prior to November 1, 1994, the law of the Second Circuit permitted a defendant to be held responsible for co-conspirator

conduct occurring before the defendant joined the conspiracy and thus Amendment 503 *substantively* modified that legal rule. In essence, the Government is urging the Court to hold that an individual circuit's interpretation of the Guidelines, regardless of the propriety of that interpretation, is indelible during the time period in which it is applied, rather than being subject to correction by the Sentencing Commission. But see Braxton v. United States, 500 U.S. 344, 348 (1991) ("Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest."). This argument is most comprehensively set forth in United States v. Capers, 61 F.3d 1100 (4th Cir. 1995), which considered the retroactive effect of Amendment 500 to the Guidelines.

On November 1, 1993, Amendment 500 took effect, adding an application note to the commentary of section 3B1.1. The Sentencing Commission stated that the amendment was intended to clarify the operation of the Guidelines in order to resolve a circuit split, and compared several circuit court precedents that were approved by the amendment with a Fourth Circuit precedent that was effectively overruled by the amendment. The Seventh Circuit was the first to consider the effect of Amendment 500. In doing so, the court concluded that the

21

amendment adopted a reasonable interpretation of the unchanged plain language of the applicable guideline, and thus it "constitute[d] a clarification of the appropriate application of § 3B1.1 rather than a substantive change to the guidelines," thereby nullifying the Seventh Circuit's previous interpretation. United States v. Fones, 51 F.3d 663, 669 (7th Cir. 1995). The Fourth Circuit, whose interpretation of section 3B1.1 had been explicitly overruled by Amendment 500, reached a contrary conclusion. That court determined that its previous decision had been "based on the plain meaning" of the guideline rather than an interpretation of ambiguous language, and thus the "amendment to the commentary [was] contrary to the plain meaning of § 3B1.1(b)," and constituted a substantive change of the law. Capers, 61 F.3d at 1112.[9]

Putting aside the question of whether courts may refuse to retroactively apply an amendment solely because it would require them to overrule their previous interpretation of the "plain

---

[9]   The Second Circuit also held that Amendment 500 was substantive, but for a wholly different reason that is inapplicable here. Recognizing that the new Application Note "created a power where there was none before," the court concluded that Amendment 500 "did more than clarify § 3B1.1." United States v. Patasnik, 89 F.3d 63, 71 n.4 (2d Cir. 1996). In the instant case, Amendment 503 did not provide sentencing courts with any new powers. Rather, the amendment explains that sentencing courts do not have, and never properly had, the power to hold late-entering co-conspirators responsible for conduct prior to their joining the conspiracy.

meaning" of a Guidelines provision,[10] the Court finds that Amendment 503 employs a reasonable interpretation of ambiguous language in the commentary to section 1B1.3, and thus is properly characterized as a clarification of the Guidelines. See United States v. Felix, 87 F.3d 1057, 1060 (9th Cir. 1996) (recognizing that an amendment which resolves an ambiguous Guideline provision is properly accorded retroactive effect). As discussed above, the actual text of the pre-1989 version of section 1B1.3 does not mention accountability for conduct in furtherance of a conspiracy. The Court has already determined that the commentary language in that section was ambiguous in its failure to address whether conduct "known to or . . . reasonably foreseeable to the defendant" was properly construed as backward-looking. Amendments in the early 1990s further clarified the meaning of the relevant language, culminating with

_____

[10] The circuits appear to be split on the issue of whether post-sentence amendments that require a circuit to overrule its precedent may be applied when reviewing a defendant's sentence. See Capers, 61 F.3d at 1111-12 & n.7 (citing appellate decisions on both sides of the debate); see also United States v. Rosenkrans, 236 F.3d 976, 978 (8th Cir. 2001) (holding that amending commentary may be binding even if it "conflicts with prior judicial interpretation of the guideline"); United States v. Marmolejos, 140 F.3d 488, 492 (3d Cir. 1998) (reasoning that while an amendment "may alter the practice of the courts in construing [a Guideline provision], and may even reverse the case law interpreting [commentary to that provision], it is the text of the amendment--not the court's gloss on that text--that ultimately determines whether the amendment is a clarification or a substantive revision"). The Second Circuit does not appear to have directly commented on the retroactive effect of an amendment that effectively overrules its prior interpretation.

Amendment 503's clear directive that section 1B1.3 solely covers prospective co-conspirator conduct. Under these circumstances, the Court cannot credit the Government's contention that Amendment 503 is substantive merely because it contradicts this Circuit's previous interpretation.

### ii.    Clarifying Amendments Are Not Available on Collateral Review as a Matter of Course

Clarifying amendments "must be given effect on direct review." United States v. Kirkham, 195 F.3d 126, 132 (2d Cir. 1999). It does not follow, however, that clarifying amendments must be applied on *collateral* review of a defendant's sentence. On the contrary, the general rule is that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows either actual innocence or cause for his default and prejudice resulting therefrom. See Massaro v. United States, 538 U.S. 500, 504 (2003) (citing Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982)). A defendant's collateral attack on his sentence does not raise any anomalous issues that would waive the standard rules governing procedural default. Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) ("Insofar as claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional, . . . absent a complete

miscarriage of justice, such claims will not be considered on a Section 2255 motion where the defendant failed to raise them on direct appeal.").[11]

Nonetheless, Cook argues that post-sentencing clarifying amendments may be applied on collateral review without a showing of cause and prejudice. He cites precedents of the First and Third Circuits for this proposition. See United States v. Marmolejos, 140 F.3d 488, 491, 493-94 (3d Cir. 1998) (remanding for resentencing on the basis of a post-appeal clarifying amendment to the Guidelines); Isabel v. United States, 980 F.2d 60, 61 & n.2 (1st Cir. 1992) (remanding for reconsideration of a sentencing determination in light of a pre-appeal clarifying amendment). Neither of these courts, however, provides any explanation for why a post-sentence clarifying amendment should be available on collateral review without taking into account the defendant's failure to raise that claim on appeal.[12] In the Court's opinion, the rulings of the Sixth and Eleventh Circuits

---

[11] The cause-and-prejudice exception to a petitioner's procedural default serves to safeguard against a miscarriage of justice. See Philips v. Smith, 717 F.2d 44, 48 (2d Cir. 1983) (citing Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977)).

[12] Although the Third Circuit held that a clarifying amendment may serve as a ground for collateral relief even when the amendment did not take effect until after the defendant's appeal was final, see Marmolejos, 140 F.3d at 489, 491, the distinct procedural posture of this case does not require the Court to determine whether amendments enacted after a defendant's appeal may be applied on collateral review. Here, Amendment 503 was available on appeal, and thus must be considered with reference to the doctrine of procedural default.

are better aligned with the governing law of this Circuit. See Burke v. United States, 152 F.3d 1329, 1332 (11th Cir. 1998) (declining to consider argument without a showing of cause and prejudice); Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996) (declining to consider argument absent a miscarriage of justice). Short of constitutional or jurisdictional error, a defendant seeking to apply a post-sentencing clarifying amendment on collateral review must show cause for his default and resulting prejudice or otherwise demonstrate that the court's failure to consider his argument will result in a miscarriage of justice.

### iii.   Cook Has Adequately Demonstrated Cause for and Prejudice from His Failure to Raise Amendment 503 on Appeal

Cook argues that the cause of his failure to raise the argument regarding Amendment 503 on appeal was ineffective assistance of counsel.[13] The Second Circuit has recognized that when considering a procedural default caused by ineffective assistance, courts may substitute the prejudice prong of the

---

[13] Because a claim of ineffective assistance of counsel is not subject to procedural default, Massaro, 538 U.S. at 504, Petitioner's claim may be considered as a standalone claim of ineffective assistance of appellate counsel or as a claim that ineffective assistance caused his procedural default. Compare Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002), with Sapia v. United States, 433 F.3d 212, 217-18 (2d Cir. 2005). Under either framework, the petitioner must demonstrate that his counsel was constitutionally ineffective pursuant to Strickland v. Washington, 466 U.S. 668, 687-90 (1984).

cause and prejudice test with the prejudice prong of the ineffective assistance test. See Sapia v. United States, 433 F.3d 212, 218 (2d Cir. 2005) (citing Prou v. United States, 199 F.3d 37, 49 (1st Cir. 1999)); also Vicioso v. United States, Nos. 99 Civ. 1139 SS, 92 Cir. 1138 SS, 1997 WL 599381, at *5 (S.D.N.Y. Sept. 29, 1997) (Sotomayor, J.). Accordingly, the issue before the Court is whether the assistance of Cook's appellate counsel fell below an objective standard of reasonableness and whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, i.e., whether he was thereby prejudiced. Johnson v. United States, 313 F.3d 815, 817-18 (2d Cir. 2002) (quoting Strickland v. Washington, 466 U.S. 668, 687-90 (1984)); accord Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 197 (2d Cir. 2002) (holding that the Strickland test "applies to the evaluation of appellate counsel as well as trial counsel"). After reviewing the case file, the Court concludes that both of these questions must be answered in the affirmative.

The Court begins with the prejudice inquiry, as there is no need to consider the reasonableness of counsel's performance absent an indication that the petitioner was prejudiced by that performance. Here, prior to the enactment of Amendment 503, the Court sentenced Cook on the basis of an adjusted offense level

of 42 after applying enhancements for the sanctioned use of violence and the quantity of narcotics to his base offense level of 36. Shortly thereafter, Amendment 503 took effect. Cook's sentence was then affirmed on appeal, although Amendment 503 was neither raised by appellate counsel nor considered by the appellate court. In this context, prejudice should be evaluated only in terms of whether the defendant's sentence would have been sustained if Amendment 503 had been raised on appeal.

Amendment 503 clarifies that a sentencing court should not take into account the past conduct of co-conspirators when determining the scope of the defendant's conduct. See supra Part II.A.1.i. In the context of Cook's sentence, Amendment 503 would limit the quantity of heroin for which he was accountable to the amount reasonably foreseeable to him after he entered the conspiracy in the summer of 1988. The record at sentencing shows that Cook was found responsible for over 100 kilograms of heroin. That amount was calculated on the basis of the quantity of drugs distributed over the course of the entire conspiracy, which spanned 1987 to 1989. In making this finding, the Court specifically referenced the "foreseen, known, or should have known" language approved in Miranda-Ortiz. (Sentencing Tr. 15, 18; Gov't Letter Oct. 11, 1994; Rivera Sentencing Tr. 30, Apr. 24, 1991.) Because the concepts of backward- and forward-looking accountability were merged, the evidence relied on at sentencing

28

does not support a finding that over 100 kilograms of heroin were *prospectively* foreseeable to the petitioner at the time he entered the conspiracy. As clarifying amendments must be given effect on direct appeal, Kirkham, 195 F.3d at 132, there is a reasonable probability that, had Amendment 503 been raised on appeal, the appellate court would have remanded to the district court to articulate Cook's responsibility for drug quantity in light of his status as a latecomer to the conspiracy. Therefore, Cook was prejudiced by his counsel's failure to raise Amendment 503 on direct appeal. See Strickland, 466 U.S. at 694.

In light of this conclusion, the Court must consider whether the performance of Cook's appellate counsel fell below an objective standard of reasonableness. Cook's counsel at sentencing raised a number of issues, including her argument that Cook was a latecomer to the conspiracy, and thus should not be held responsible for drugs distributed by the conspiracy before he joined the conspiracy in the summer of 1988. (Sentencing Tr. 17.) Six days after Cook was sentenced, and five days following the entry of judgment in his case, Amendment 503 took effect. The Government's principle authority for its argument that Cook could be held responsible for past quantities of heroin, Miranda-Ortiz, was overruled by Amendment 503, and, in the following years, several courts noted that the amendment limited a defendant's accountability for co-conspirator conduct

to conduct taking place after the defendant had joined the conspiracy. See supra Part II.A.1.i. Not only did Cook's appellate counsel fail to raise Amendment 503, but he failed to reassert sentencing counsel's argument that Cook could not be held responsible for quantities of heroin before he joined the conspiracy. Simply shepardizing Miranda-Ortiz would have directed counsel to Amendment 503. In addition, had appellate counsel possessed reasonable familiarity with the Guidelines provisions under which the defendant was sentenced, he would have undoubtedly raised Amendment 503 after it took effect. The abandonment of an argument made at sentencing, when that argument provided the defendant's best opportunity for relief and should have been apparent to appellate counsel, was not reasonable. Though a finding of ineffectiveness should not be taken lightly, the failure to raise Amendment 503 under the circumstances here falls below an objective standard of reasonableness.

In summary, Amendment 503 clarifies the operation of section 1B1.3 and the petitioner has adequately demonstrated cause for and prejudice from his counsel's failure to raise that amendment on appeal. Consequently, Cook is entitled to vacature of his sentence and resentencing consistent with the strictures of Amendment 503.

2. **The Sufficiency of the Evidence Supporting the Court's Drug Quantity Finding**

Cook also challenges the sufficiency of the evidence supporting the Court's finding that he was responsible for over 100 kilograms of heroin. As the Court has concluded that its drug quantity finding must be reviewed under the strictures of Amendment 503, a new finding of drug quantity will be made at Cook's resentencing. Thus, the sufficiency of the evidence supporting the Court's previous drug quantity finding is inessential to this petition.

If Amendment 503 were not retroactively applicable to Cook's sentence, however, his challenge to the Court's drug quantity finding would not be well-taken. This argument was considered on appeal and rejected by the Second Circuit. See United States v. Rivera, 216 F.3d 1074, 2000 WL 823361, at *3 (2d Cir. 2000) (unpublished table decision) (upholding the district court's finding of the heroin attributable to Cook at sentencing). On appeal, Cook argued that the Court's drug quantity finding "was against the factual evidence in this case." (Cook App. Br. 42.) The Second Circuit concluded that there was sufficient evidence to find that Cook was part of a single overarching conspiracy and that the Court did not abuse its discretion in holding Cook responsible for over 100 kilograms of heroin transacted by that conspiracy. See Rivera,

2000 WL 823361, at *3.[14] It is established law within this Circuit that a § 2255 petition "may not relitigate issues that were raised and considered on direct appeal." United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997). Therefore, absent a valid argument that the Court should not have held Cook responsible for the entire quantity of heroin transacted by the Rivera Organization (such as Cook's colorable argument on this petition that Amendment 503 should be applied to his sentence) the Court's drug quantity finding was already raised, considered, and affirmed on appeal, and may not be challenged on this petition.

**B. Counsel's Failure to Challenge the Court's Upward Departure for Drug Quantity on the Basis that It Violated the Ex Post Facto Clause Did Not Constitute Ineffective Assistance**

Cook also contends that his counsel was ineffective in failing to argue that the Court's four-level upward departure on the basis of drug quantity violated the Ex Post Facto Clause.[15]

---

[14] That Cook's appellate argument focused on a theory of multiple conspiracies rather than on the propriety of holding a late-joining conspirator accountable for the conspiracy's prior conduct is irrelevant. On appeal, Cook explicitly challenged the sufficiency of the evidence underlying the Court's drug quantity finding, and the Second Circuit concluded that the Court did not abuse its discretion in enhancing Cook's sentence on the basis of the entire quantity of drugs distributed by the conspiracy.

[15] At resentencing, the Court may find that a 4-level enhancement is not appropriate. Nonetheless, the Court addresses Cook's argument for two reasons: (1) to establish that seeking guidance from latter drug quantity tables would not be inappropriate at his resentencing; and (2) to explain that the Court's reference

As discussed above, see supra Part II.A.1.iii, to demonstrate ineffective assistance of counsel, Cook must show that counsel's failure to raise this argument at sentencing or on appeal fell below an objective standard of reasonableness and resulted in prejudice to the defendant. Because Cook's ex post facto argument is without merit, the failure to raise the argument earlier was not prejudicial.

In the nearly identical circumstances of United States v. Rodriguez, the Second Circuit approved the same procedure relied on by the Court at sentencing. 968 F.2d 130, 140 (2d Cir. 1992). In Rodriguez, the defendant was sentenced under the CCE provision of an earlier version of the Guidelines for his role in a large-scale narcotics conspiracy. Id. at 133, 140. Recognizing that the base offense level for a CCE conviction inadequately reflected the nature of the defendant's crime, the sentencing court chose the then-current version of the Guidelines to guide its departure for drug quantity, and proceeded to apply a 6-point enhancement. Id. at 140. The Second Circuit approved this procedure, concluding that "the district court appropriately compared [the defendant's] conduct 'to the type of conduct for which the Commission has prescribed more severe punishment,' by seeking guidance from the new drug

---

to the pre-1994 drug quantity table does not provide an alternate ground for resentencing.

quantity table provided by the Commission." Id. (citing United States v. Kim, 896 F.2d 678, 685 (2d Cir. 1990)).

Although it is true that the Second Circuit did not explicitly hold that the sentencing procedure approved in Rodriguez was valid under the Ex Post Facto Clause, the logic of the case compels that inference. The pre-1989 commentary to the CCE provision of the Guidelines stated that if "the quantity of drugs substantially exceeds that required for level 36 in the drug quantity table . . . an upward departure may be warranted." U.S.S.G. § 2B1.5 cmt. n.2 (Oct. 15, 1988). Therefore, under the applicable Guidelines the sentencing court had wide discretion to deviate upward from a base offense level of 36. A sentencing court's reference to subsequent Guidelines to guide its use of that discretion in no way implicates the Ex Post Facto Clause, so long as the court does not consider itself bound to abide by the same and its discretion is not otherwise limited by the earlier Guidelines.

Here, the Court found that Cook was responsible for a quantity of heroin ten times greater than that required for a base level of 36 in the pre-1989 drug quantity table. See U.S.S.G. § 2D1.1 (Oct. 15, 1988). Per the direction of the pre-1989 Guidelines, it determined that an upward departure was warranted by virtue of a drug quantity finding that substantially exceeded the quantities considered by section

2D1.1. Rather than accounting for this substantially greater drug quantity by pulling a departure level out of thin air, the Court referred to the revised drug quantity table to guide the exercise of its discretion. In light of the reasoning of Rodriguez and the weight of analogous authority outside this Circuit, see, e.g., United States v. Logal, 106 F.3d 1547, 1551 (11th Cir. 1997) (concluding that a sentencing court does not violate the Ex Post Facto Clause when it looks to later Guidelines for guidance in determining the degree of an upward departure, and listing supporting authorities from its sister circuits), the Court is confident that its sentencing procedure did not violate the Ex Post Facto Clause.

Cook's sole support for his position is a split decision of the Ninth Circuit, in which the panel majority held that the district court violated the Ex Post Facto Clause by looking to a Guideline provision passed subsequent to the defendants' offense conduct, and which nearly doubled the defendants' relevant offense levels after it was applied. United States v. Canon, 66 F.3d 1073, 1081 (9th Cir. 1995). The Canon majority noted that the version of the Guidelines used at sentencing provided methods to enhance a defendant's sentence to account for the underrepresented seriousness of his past criminal conduct. This could be done either by "an upward [offense level] departure on extraordinary aspects of the offense of conviction not

adequately taken into consideration in the guidelines or on criminal history grounds by making the proper findings of underrepresentation" and appropriately enhancing a defendant's criminal history category. Id. at 1080. Instead, the district court applied an upward offense level departure for the dangerousness of the defendants' conduct by reference to a later amendment to the Guidelines, even though the sentencing court had already applied offense level departures from the earlier Guidelines that adequately accounted for the dangerousness of the defendants' conduct and the court had further discretion to apply an upward departure to the defendants' criminal history categories. Id. Thus, the sentencing court violated the Ex Post Facto Clause by exceeding the offense level enhancements available under the earlier Guidelines and ignoring the available criminal history category enhancements, opting instead to apply an offense level enhancement provided by the amended Guidelines.[16]

---

[16] The Canon court also refers to offense level departures and criminal history category departures as "vertical" and "horizontal" departures respectively. 66 F.3d at 1079-80. These labels refer to the orientation of the offense level and criminal history category axes of the sentencing table. See U.S.S.G. ch. 5 pt. A. Thus, the sentencing court in Canon violated the Ex Post Facto Clause by applying a vertical departure to enhance the defendants' sentencing ranges even though under the earlier Guidelines it had horizontal departure power at its disposal.

Here, the pre-1989 Guidelines provided vertical departure power, but the appropriate magnitude of that departure was left

As discussed above, this Court, and the Rodriguez sentencing court, properly analogized to a later version of the Guidelines because the pre-1989 Guidelines expressly provided for an upward offense level departure to account for excessive drug quantities, but did not provide any method whatsoever for establishing the size of that upward departure. Therefore, Cook's cursory analogy to Canon is inapt. The Canon court found a violation of the Ex Post Facto Clause because the earlier Guidelines provided a means to enhance the defendants' sentences that was wholly different from the later Guidelines provision, and thus reliance on the amended Guidelines improperly, and unnecessarily, subjected the defendants to the substantial revisions of the later Guidelines. Thus, regardless of the persuasive value of Canon's holding in the Second Circuit, it is inapplicable to the facts of this case.[17]

_____

to the discretion of the Court. Seeking guidance for the proper boundaries to that departure power by reference to later versions of the Guidelines is entirely appropriate. There is no question of an available horizontal departure that the Court failed to apply. Therefore, the horizontal/vertical distinction central to the Canon court's reasoning is completely irrelevant to the instant case, providing further support for the Court's conclusion that Canon does not support the petitioner's argument.

[17] Indeed, the Canon majority's reasoning was not even persuasive to the entire panel hearing the case. Judge Leavy noted that he was "at a loss to understand how the district court can be deemed to have erred by taking . . . facts into consideration and, relying on the wisdom and expertise of the Commission, analogizing them to sentencing factors that, by the time of

Because the claim that the Court's upward departure for drug quantity violated the Ex Post Facto Clause is without merit, Cook was not prejudiced by his counsel's failure to raise that claim on appeal. Therefore, Cook did not receive ineffective assistance of counsel in this regard.

### C. Counsel's Failure to Argue that Guideline Section 2D1.5 was Unconstitutionally Vague Did Not Constitute Ineffective Assistance

Cook also contends that his appellate and sentencing counsel's failure to argue that section 2D1.5 was unconstitutionally vague deprived him of his constitutional right to effective counsel. As Cook fails both prongs of the Strickland test for ineffective assistance of counsel, see supra Part II.A.1.iii, his claim on this petition must fail.

The Court need not decide whether a Guidelines provision may be attacked on vagueness grounds,[18] as a vagueness challenge is not well taken under the circumstances of this case. Cook

_____

sentencing, had been taken into consideration by the Commission." Canon, 66 F.3d at 1082 (Leavy, J., dissenting).

[18] While the Second Circuit has reserved the question of whether the Guidelines are subject to vagueness challenges, see United States v. Johnson, 221 F.3d 83, 99 (2d Cir. 2000) ("It is not clear whether the Guidelines are subject to attack on vagueness grounds."), other circuits have reached opposing positions. Compare United States v. Brierton, 165 F.3d 1133, 1139 (7th Cir. 1999) (holding that Guidelines may not be challenged on vagueness grounds); United States v. Wivell, 893 F.2d 156, 159 (8th Cir. 1990) (same), with United States v. Gallagher, 99 F.3d 329, 334 (9th Cir. 1996) (permitting vagueness challenge to Guidelines but finding that the challenged Guidelines provision was not unconstitutionally vague as applied to the defendant).

acknowledges that, when "the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' i.e., 'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003) (quoting United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993)); accord Chapman v. United States, 500 U.S. 453, 467 (1991). Here, Cook was arrested with firearms, distributed guns to his subordinates as part of a large drug conspiracy, and brought guns to a public park in order to protect his drug operation from a robbery during the course of the conspiracy. There can be no question that Cook sanctioned the use of violence within the meaning of section 2D1.5 when he armed himself and his subordinates as part of a large-scale heroin distribution organization and actively employed firearms to ensure the success of that operation. Because there are no reasonable grounds that section 2D1.5 is unconstitutionally vague as applied to his sentence, Cook was not prejudiced by counsel's failure to raise the issue below.

Further, the lack of any authority supporting a vagueness challenge to section 2D1.5 or similar Guidelines provisions undermines Cook's argument that the vagueness challenge, as distinct from the challenge to section 2D1.5 rejected at sentencing and on appeal, see Rivera, 2000 WL 823361, at *3, was

39

so obviously meritorious that the failure to raise it fell below an objective standard of reasonableness. As Cook's challenge fails both prongs of the Strickland test, his claim of ineffective assistance of counsel for failure to raise a vagueness challenge to section 2D1.5 must fail.

**D. Cook's Indictment Was Returned by a Valid Grand Jury**

Earlier in this litigation, Cook requested discovery of the orders relating to the commencement, extension, and termination of the grand jury that indicted him. The Court granted his request in orders dated May 17 and June 3, 2004, and the Government provided copies of the relevant documents to him. Those documents establish that Cook's indictment was returned by a special grand jury that was impaneled on September 6, 1988, and extended for three six-month terms, pursuant to 18 U.S.C. § 3331. Thus the grand jury was properly impaneled until September 6, 1991, and had authority to return a valid indictment against Cook at the time of his June 11, 1991 indictment.[19]

---

[19] In his reply, Cook challenges the authenticity of the copies of the grand jury orders he received from the Government. Cook's challenge is baseless. The May 17, 2004 Order directed that the requested documents be unsealed and provided to Cook following the Government's review of the orders for confidentiality. The Government provided Cook with copies pursuant to that Order. If he is so inclined, counsel is entitled to view the originals after making appropriate arrangements with the Government. Cook did not request that the orders be entered into evidence, nor need they be, as they are already in the court record and subject to judicial notice. See In re Indian Palm Assocs., 61 F.3d 197, 205-06 (3d Cir. 1995) (noting that a court may take

Briefly, the Court rejects Cook's challenges to the constitutionality of a fully-extended, 36-month special grand jury and the permissible scope of a properly constituted special grand jury. Cook provides no rational argument for why a grand jury may be extended for up to 24 months without violating the Fifth Amendment, but a special grand jury is then unconstitutional if extended for 36 months pursuant to § 3331. Thus, the Court is not persuaded by Cook's contention that the provision of § 3331 allowing for a special grand jury term to be extended three times is in violation of the Fifth Amendment. As to the permissible scope of a special grand jury, numerous courts have recognized the broad investigative purview of § 3331. See, e.g., United States v. Koliboski, 732 F.2d 1328, 1330 (7th Cir. 1984); Simpson v. Reno, 902 F. Supp. 254, 257 (D.D.C. 1995) (citing legislative history of § 3331). Thus, Cook's indictment for his role in a large, well-organized drug conspiracy was returned by a special grand jury acting within its powers. See Wax v. Motley, 510 F.2d 318, 321 (2d Cir. 1975) (upholding an indictment on drug charges that was returned by a special grand jury); Simpson, 902 F. Supp. at 257 (citing legislative history of § 3331 for proposition that special grand

---

judicial notice of facts on the record that are relevant to "course and timing or proceedings" of the case).

juries were designed to deal with, inter alia, "the importation of drugs").

### E. Cook's <u>Booker</u> Claim Is Not Cognizable on Collateral Review

Finally, in an amendment to his petition, Cook argues that he is entitled to resentencing so that the Court may apply the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005). Although <u>Booker</u> will be applied when the Court resentences Cook in compliance with the strictures of Amendment 503, the existence of that decision alone does not provide a sufficient ground for resentencing.

Cook argues "that he is entitled to have the <u>Booker</u> decision applied to his case, because <u>Booker</u> is based on the Supreme Court's prior decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), which was decided while petitioner Cook's direct appeal was still pending, and which petitioner Cook expressly cited in that direct appeal." (Amendment to Petr.'s Br. 2.) The Second Circuit, however, has already evaluated the availability of <u>Booker</u> in the context of § 2255, holding that "it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that <u>Booker</u> issued." <u>Guzman v. United States</u>, 404 F.3d 139, 144 (2d Cir. 2005), <u>cert denied</u> 126 S. Ct. 731 (2005).

Cook contends that his case is different from <u>Guzman</u> and the cases cited in that opinion because, unlike Guzman, he

raised *Apprendi* on direct appeal, and this distinction compels a different result. Cook's argument is foreclosed by *Guzman*'s fundamental finding that "*Booker* was not dictated by *Apprendi*," but rather it announced a rule that is entirely distinct from *Apprendi*. *Id.* at 142. The *Guzman* court explicitly recognized that if *Booker* had been compelled by *Apprendi*, Guzman would have been entitled to relief merely because his "conviction was not final when *Apprendi* issued," regardless of whether he had raised *Apprendi* on direct appeal. *Id.* at 142; *see also* *United States v. Ocasio*, No. 02 Civ. 1192(CFD), 2005 WL 1489462, at *2 (D. Conn. June 20, 2005) (rejecting application of *Booker* on collateral review even though petitioner had first raised an *Apprendi* claim on appeal). That Cook unsuccessfully raised *Apprendi* on direct review does not make his petition more deserving of *Booker* consideration than the petition of a defendant who never even had an *Apprendi* argument evaluated on direct review. This is for the simple reason that an *Apprendi* claim is wholly distinct from a *Booker* claim.

To the extent that Cook acknowledges that *Guzman* rejects the retroactive application of *Booker* on collateral review, he goes on to argue that *Guzman* was wrongly decided. Because this Court has neither authority nor reason to declare that *Guzman* was wrongly decided, it declines his invitation to "address why the reasoning in *Guzman* is incorrect." (Amendment to Petr.'s Br.

5 n.3.) Cook's conviction was final when the Supreme Court denied his writ of certiorari on October 7, 2002. See Clay v. United States, 537 U.S. 522, 527 (2003). Consequently, his Booker argument is not cognizable on collateral review.

## III. CONCLUSION

Cook's § 2255 petition is granted on the single ground stated above. See Part II.A.1. In the absence of an appeal or other reasonable request for adjournment, The parties shall appear before the Court on January 10, 2007 at 10:30 a.m., when the Court will (1) vacate the petitioner's criminal judgment, 89 Cr. 346, Entry No. 569, and (2) resentence the petitioner after hearing argument from the parties regarding the quantity of drugs properly attributable to the petitioner. The Clerk of Court is directed to close this case (03 Civ. 7922).

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           November 15, 2006

44